## TRUMBATURI v. KATZ & BESTHOFF, Limited.*
### No. 14661.

Court of Appeal of Louisiana. Orleans.
April 23, 1934.

*Rehearing refused May 21, 1934. Writ of certiorari granted July 2, 1934.

of her daughter's death may be set forth briefly as follows:

That defendant owns and operates several retail drug stores in the city of New Orleans and that among the drugs sold by it is carbolic acid which is alleged to be a dangerous poison; that the board of health of the state of Louisiana has enacted, under proper legal authority, regulations under which all dispensers of poison are required to maintain for inspection by proper authorities a written record of all sales of poisons and are specially required to enter in such record certain information which, it is contended, may be obtained only from the person to whom the poison in each case is sold; that plaintiff's daughter, though twenty-one years of age, was "demented, simple minded, idiotic" to such an extent that her condition was apparent to any one who might make the slightest attempt to obtain any form of information from her, and that even had her name and address been asked the answers would have indicated her mental condition and, that particularly would her incapacity have appeared had she been asked the purpose for which she wanted the drug; that not only defendant, but all other druggists have deemed it necessary to adopt a rule requiring that an employee who delivers poison to a purchaser shall question the purchaser in order to comply with the said regulation of the board of health; and that it was a rule and custom of defendant to require a written receipt before making delivery of any poison.

It is also alleged that petitioner's daughter ordered by telephone carbolic acid from one of defendant's stores and directed that it be delivered at her residence and that the proper record of the said sale was not made; that had the said employee who made the delivery questioned the daughter or required a receipt from her he would have discovered her mental condition; and that the most casual observation would have sufficed to apprise him of the danger of delivering such a poison to so irresponsible a person.

It is charged that in hurriedly handing to the daughter the package and in rushing away without questioning her and without obtaining a receipt, the employee was guilty of a negligent act which was the proximate cause of the subsequent death of the daughter who drank the acid with fatal results.

The regulation of the board of health to which reference is had in one of the petitions is No. 35 and reads as follows:

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

John A. Woodville of New Orleans, for appellant.

**JANVIER, Judge.**

Plaintiff appeals from a judgment dismissing on exception of no cause of action her suit in which she seeks recovery for the death of her daughter which death she attributes to negligence on the part of defendant's employees.

The alleged acts of negligence of which plaintiff complains as the proximate cause

"All druggists and all other persons dealing in or selling poisonous substances shall keep a special book, open at all times to the proper authorities, in which they shall register the name and quantity of the drug, and the name and residence of the person to whom any poisonous substance is sold, the use it is intended for, also the date of the sale, whether sold upon a personal acquaintance with the buyer."

Even if it be assumed that the said regulation placed upon defendant any duty in favor of plaintiff or her daughter, the duty was limited to the recording of information on five and only five matters:

(1) The name and quantity of the drug ordered.

(2) The name and residence of the purchaser.

(3) The use for which it is intended.

(4) The date of the sale.

(5) Whether the sale is made upon personal acquaintance with the buyer.

There is nothing in the regulation which prohibits the sale of carbolic acid or which makes the right to sell it in any way dependent upon the information received from the purchaser. In other words, the regulation does not require that there shall be no sale except upon personal acquaintance, nor does it require that there shall be no sale unless the drug is to be used for certain purposes set forth in the regulation. It merely requires that when the sale is made, a record must be made of this information.

It is evident that the charge in the brief for plaintiff that even the name and address of the purchaser was not obtained by defendant is unfounded because it is conceded that the order was given by the daughter over the telephone and that the package was delivered to the person who ordered it and that it was sent to the correct address.

It follows that, even if it be true that no record of the sale was made, practically all of the information which ought to have been entered in the record was obtained from the person who made the purchase or was already in the possession of the defendant.

The first requirement is that the name and quantity of the poison must be recorded. Evidently the name and quantity of the drug was given to the defendant, otherwise there could have been no delivery at the residence.

Under the second requirement the name and residence of the person who made the purchase should have been entered in the record. It is evident that the name and residence was given or the delivery could not have been properly made.

The third requirement placed upon the druggist the duty of entering in the record the use for which the drug is intended. It is alleged that this requirement was not complied with and we shall later discuss the effect of this allegation of failure to comply with the regulation.

Under the fourth requirement the date of the sale should have been entered. The druggist knew the date on which the sale was made and, therefore, to obtain that information there was no necessity for him to question the purchaser.

The fifth requirement is that the druggist state in the record whether the sale is made upon personal acquaintance with the purchaser. Whether or not the sale in this case was made upon personal acquaintance with the buyer was known by the druggist. No further information from the purchaser was necessary to enable the druggist to make the entry on this point.

Thus, although defendant is charged with failure to enter in the proper record certain information and although it is charged that he did not require that the purchaser answer certain questions; the petition itself shows that with one exception all of the information was in his possession or was obtained from the purchaser and could have been entered in the record.

There was no causal connection between the death of plaintiff's daughter and the failure of the clerk to enter in the record certain information which was in his possession.

Therefore, so far as the alleged failure to comply with the board of health regulation is concerned, we limit our consideration to the effect of the alleged failure of the clerk to ask the purchaser what use she intended to make of the acid.

We repeat that there is no requirement that the sale of poisons be limited to persons who intend to use them for certain designated purposes. Therefore, whatever may have been the answer had the question been asked, the sale could legally have been made and thus the complaint cannot be directed at the fact that the sale was made, but only at the fact that it was made without the purchaser having been first required to state the purpose for which she intended to use the drug.

While it is true that in considering an exception of no cause of action the well pleaded allegations of fact are to be consider-

ed as true, that rule cannot be extended to such an extent as to require that a court accept as true charges so patently unsound and unfounded as to lead to the belief that they were inserted merely to prevent the dismissal of the petition on preliminary exception. We place in such category the charge that had the clerk inquired by telephone of the daughter the answer to the question as to what use she intended to put the poison to, he would have at once discovered her true condition and would not have made the sale.

The purchaser coherently and clearly gave her name and address and also gave the name and quantity of the drug desired and we cannot believe that her true mental condition, which did not appear in her answers to these questions, would have manifested itself had one simple additional question been asked .her.

Counsel for plaintiff seem to overlook the fact that the information which should have been entered in the said record might have been and, in fact, was obtained by the clerk who received the order over the telephone and it is charged that the act of the messenger who hurriedly made the delivery was the negligence which caused the death. But the regulation does not require that the delivering messenger shall question the purchaser of the drugs, but only that the druggist shall in some manner obtain the information. Usually a messenger does not know what is contained in a wrapped package of medicine and even if he did know it would be a very dangerous thing to intrust to him discretion to determine whether the person who might answer the bell at the house to which he had been sent was of sufficient age or mental capacity to be intrusted with the package.

■ Nor can it be said that there was any duty in the clerk who took and who filled the order to warn the messenger to deliver the package only to a responsible person. The statute did not require that such care be exercised nor do we think that it is required by the standard of care by which druggists should measure their actions. In taking the order over the telephone the clerk complied substantially with all of the requirements of the board of health and yet he failed to discover that the person who gave the order was an imbecile. It appears to us that full compliance with the regulation would not have caused him to realize the unfortunate condition of the plaintiff's daughter.

In the absence of such regulation there was no reason why he should not have complied with the order.

Nor is it at all certain that the framers of the regulation intended thereby to place upon venders of poison any duty towards members of the general public who might deal with them. We note that the record which the regulation requires must be available only to the proper authorities, and it is argued that the purpose was not to afford protection to purchasers, but to offer assistance to the police or other authorities in tracing murders, suicides, etc.

We find it unnecessary, because of our conclusions on other points, to determine this very interesting question.

But it is contended that the allegation that defendant's rules required a written receipt from the purchaser must be taken as true. It is also argued that the allegation that the rule was violated, which also must be taken as true, shows that there was negligence and from these two contentions results the third that this negligence, to wit, the failure to require a receipt, was the cause of deceased's failure to comply with the request for a receipt and that to have demanded a receipt would have given indication of her mental condition.

■ That in the conduct of his business one makes rules raises a presumption that such rules are necessary. But, even if it be true, which it is not necessary to concede, that technically every violation of a rule is an act of negligence, it does not follow that such negligence can always be taken into consideration in determining liability where such rules prescribe a course of conduct more stringent and onerous than that which is required by statute or by the dictates of prudence. It would be most unfair to hold that one who has made such rules is bound thereby and is liable merely because his conduct did not comply with those rules, even though his conduct did comply with statute and did meet the standards of care which ordinary prudence should require in such particular kind of business.

■ No receipt is required by the statute and we do not see that the requirement of a receipt is so necessary in a situation of this kind as to authorize the view that the failure to obtain one constitutes actionable negligence.

Furthermore, it is only conjectural that the requiring of a receipt would have disclosed the mental condition of the recipient of the package.

It is a matter of common knowledge that when a receipt is required for merchandise the receipt is in printed form, and is already filled out, and that all that is required of the recipient is a signature, which is often most unintelligibly written. The mere allegation of plaintiff that such a result would have followed had the messenger required a receipt must yield to the thought that such a charge is purely an assumption on the part of the pleader and that the discovery of the mental condition would in all probability not have resulted even had the receipt been required.

Furthermore the delivery of the package in this instance was not the proximate cause of the ultimate unfortunate result. The cause was the desire of plaintiff's daughter to take her own life. There was no legal causal connection between the failure to secure a receipt or the failure to ask the daughter what she intended to use the medicine for, and the fact that she ultimately died as a result of drinking poison.

We, therefore, conclude that there was no actionable negligence on the part of defendant and also that, even if it be conceded that defendant's employees were at fault in the particulars alleged, such fault was not the proximate cause of the death of plaintiff's daughter.

The judgment appealed from is affirmed.

Affirmed.